2002 UT 44

**Paul BLACKNER, Plaintiff and Appellant,**

**v.**

**STATE of Utah, DEPARTMENT OF TRANSPORTATION, and Town of Alta, Defendants and Appellees.**

No. 20000906.

Supreme Court of Utah.

April 30, 2002.

Tad D. Draper, Sandy, for Blackner.

Mark L. Shurtleff, Att'y Gen., Sandra L. Steinvoort, Brent A. Burnett, Asst. Att'ys Gen., Salt Lake City, for Department of Transportation David C. Richards, George W. Burbidge II, Salt Lake City, for Town of Alta.

RUSSON, Justice:

¶ 1 Paul Blackner ("Blackner") appeals from an order granting summary judgment to defendants the Town of Alta, Utah ("Alta"), and the Utah Department of Transportation ("UDOT"). We affirm.

## BACKGROUND

¶ 2 On March 14, 1998, an avalanche ("the first avalanche") thundered down on State Route 210, a two-lane road, in the White Pine Chutes area of Little Cottonwood Canyon near Alta. It buried part of the road, blocking the downhill lane of traffic. Soon thereafter, the avalanche was reported to Alta's Central Dispatch Office.

¶ 3 Kevin Payne ("Payne"), an Alta Deputy Marshal, was notified of the first avalanche and responded within minutes. Upon arrival, Payne noticed that only one lane of traffic was open and became concerned that vehicles traveling in opposite directions on State Route 210 would collide with one another in the avalanche area. Therefore, he began to direct traffic. Several minutes after Payne arrived on the scene, Dave Medara ("Medara"), an avalanche forecaster with UDOT, who was also notified of the first avalanche, arrived on the scene. After discussing the situation with Payne, Medara departed to assess other slide activity lower in the canyon.

¶ 4 Several minutes later, a front-end loader was dispatched from the Snowbird Ski Area to remove the snow from the road. While the loader was clearing the road, traffic on both sides of the first avalanche was stopped. Payne instructed travelers in the canyon—including Blackner, who had been driving up Little Cottonwood Canyon—to stop while the loader continued to work. As Blackner and others waited for the loader to

finish clearing the road, they exited their vehicles and stood on the roadside to watch the road-clearing activities.

¶ 5 After evaluating the slide activity lower in the canyon, Medara traveled up the canyon until he arrived at an area just below the scene of the first avalanche. This was the same area where Blackner and the other travelers had exited their vehicles. Medara became concerned when he noticed that the stopped vehicles, including Blackner's vehicle, were located under a known avalanche slide area. Medara therefore informed Payne by radio that he was concerned about the safety of his location and asked how long the loader would continue working.

¶ 6 Seconds after Payne told Medara that the loader was taking its last scoop, a second avalanche occurred ("the second avalanche"). The second avalanche inundated the area where Medara and Blackner had stopped their vehicles. Many people, including Medara and Blackner, were caught in and overwhelmed by the second avalanche. Blackner was seriously injured. About thirty-four minutes passed between the first avalanche and the second avalanche. Both of the avalanches originated on public land managed by the National Forest Service as part of the Wasatch–Cache National Forest.

¶ 7 Blackner brought suit against UDOT and Alta, alleging that their negligence in managing the first avalanche resulted in his injuries. Both UDOT and Alta moved for summary judgment, arguing that the Governmental Immunity Act (the "Act") barred Blackner's claims against them. Specifically, UDOT and Alta asserted that they were immune from suit because subsections 63–30–10(11) and (13) of the Utah Code preclude suits against governmental entities for injuries arising out of, in connection with, or resulting from (1) any natural condition on publicly owned or controlled land and (2) the management of natural disasters. The trial court granted the motions for summary judgment under both subsections of the Act. Blackner appeals.

## STANDARD OF REVIEW

¶ 8 Summary judgment is proper only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *Ault v. Holden,* 2002 UT 33, ¶ 15, 44 P.3d 781. When reviewing whether the trial court properly granted summary judgment, we accord the trial court's legal conclusions no deference and review those conclusions for correctness. *Ault,* 2002 UT 33 at ¶ 15, 44 P.3d 781. Furthermore, a trial court's interpretation of a statute is a question of law that we review for correctness. *State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County,* 2002 UT 8, ¶ 8, 44 P.3d 680; *State v. Lusk,* 2001 UT 102, ¶ 11, 37 P.3d 1103.

## ANALYSIS

¶ 9 The issue presented on appeal is whether the trial court erred in granting UDOT and Alta summary judgment under subsections 63–30–10(11) and (13) of the Act. Specifically, the issue is whether the trial court correctly interpreted the exceptions set forth in those subsections in holding that UDOT and Alta are immune from suit on Blackner's negligence claim because Blackner's injuries arose out of, were in connection with, or resulted from a natural condition on public lands or the management of a natural disaster. Utah Code Ann. § 63–30–10(11), (13) (1997).

¶ 10 Generally, to determine whether a governmental entity is immune from suit under the Act, we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver. *See Taylor v. Ogden City Sch. Dist.,* 927 P.2d 159, 162 (Utah 1996); *Keegan v. State,* 896 P.2d 618, 619–20 (Utah 1995). However, in this case, the parties do not dispute whether immunity has been waived, but rather dispute only whether an exception to that waiver applies pursuant to the third part of the test. Thus, we address only the issue of whether a specific exception applies to the waiver of immunity.

¶ 11 The relevant portion of the Act provides:

Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment *except* if the injury arises out of, in connection with, or results from:

. . .

    (11) any *natural condition* on publicly owned or controlled lands, [or]

. . .

    (13) the management of flood waters, earthquakes, or *natural disasters* . . . .

*Id.* (emphasis added). We first resolve whether UDOT and Alta are immune from Blackner's suit under subsection (11), and if they are immune, we need not address whether they are immune under subsection (13).

■ ¶ 12· To resolve whether the trial court erred in concluding that UDOT and Alta were immune from Blackner's suit under subsection (11) because his injuries arose out of, were connected with, or resulted from a natural condition on publicly owned or controlled land, we must determine whether the trial court correctly interpreted section 63–30–10(11) of the Utah Code. When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous. *State v. Lusk,* 2001 UT 102, ¶ 19, 37 P.3d 1103; *City of Hildale v. Cooke,* 2001 UT 56, ¶ 36, 28 P.3d 697. The statute's language plainly states that all governmental entities are immune from suit for a government employee's negligence when the plaintiff's injury arose from, was connected with, or resulted from a "natural condition on publicly owned or controlled lands." Utah Code Ann. § 63–30–10(11) (1997).

■ ¶ 13 Blackner does not argue that the first avalanche was not a natural condition. Rather, he contends that the negligence of UDOT and Alta was the *proximate cause* of his injuries instead of that avalanche. However, Blackner's argument either miscomprehends or misapplies the plain language of the Act. The Act unequivocally provides that when a *plaintiff's injury* either "arises out of[ ][or] in connection with, or results from" a "natural condition on publicly owned or controlled lands," governmental immunity is retained with respect to any action to recover for injuries *proximately caused by a government employee's negligence.* The application of the "natural condition" exception to the waiver of governmental immunity does not hinge on whether the "natural condition" in any way "proximately caused" the plaintiff's injuries. *See id.*

¶ 14 In the instant case, even assuming that the actions of Payne and Medara were negligent and proximately caused Blackner's injuries, UDOT and Alta are immune from suit to recover for those injuries because Blackner's injuries arose out of a natural condition on publicly owned or controlled land. The first avalanche and the snow pack from which both avalanches originated were natural conditions. The snow pack was situated on Forest Service land, and the first avalanche partially covered and blocked Route 210, a state-owned-and-controlled road.

■ ¶ 15 Further, Blackner's injuries arose out of the snow pack and the first avalanche. Under the statute, the "arise out of" language requires only that there be *some* causal nexus between the risk and the resulting injury. *Taylor v. Ogden City Sch. Dist.,* 927 P.2d 159, 163 (Utah 1996). In other words, *but for* the snow pack and the first avalanche, Blackner would not have suffered injury. *See id.·* Here, were it not for the first avalanche, Payne would not have stopped Blackner and others from proceeding up the canyon. In addition, if the snow pack had not been situated on public land above Route 210, it would not have resulted in either avalanche, which caused Payne to stop traffic from moving up the canyon and directly occasioned Blackner's injuries.

¶ 16 Therefore, Blackner's injuries arose out of a natural condition existing on publicly owned or controlled land. Accordingly, the trial court correctly concluded that UDOT and Alta are immune from Blackner's suit because the "natural condition" exception to the waiver of governmental immunity applies

to Blackner's injuries regardless of whether Payne and Medara were negligent.[1]

## CONCLUSION

¶ 17 The trial court correctly granted UDOT and Alta summary judgment under the Governmental Immunity Act because Blackner's injuries arose out of, were in connection with, or resulted from a natural condition on publicly owned or controlled land. We therefore affirm.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice WILKINS concur in Justice RUSSON'S opinion.

1. Blackner also contends on appeal that if we were to affirm the trial court's summary judgment order in this case, our affirmance would be contrary to public policy. However, Blackner never raised this argument before the trial court
and has thus waived the argument on appeal. *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining,* 2001 UT 112, n. 5, 38 P.3d 291; *Treff v. Hinckley,* 2001 UT 50, ¶ 15, 26 P.3d 212.